UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| State Farm Fire and Casualty Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. |
| vs. | ) | |
| | ) | PLAINTIFF DEMANDS |
| Derwin Sykes, Loraina Chapman, April Conway, | ) | TRIAL BY JURY |
| Bruce Goodman,  Johnnie Goodman, Sr., | ) | |
| Johnnie Goodman, Jr., Linda Hunter, | ) | |
| Lynette Hurt-Hatter, Kristy Jackson, | ) | |
| Kenyatta Miller, Janel Sykes, | ) | |
| Loretta Turnbow, Gary Lappin, and | ) | |
| Allied & Associates, Inc. | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, STATE FARM FIRE AND CASUALTY COMPANY ("STATE FARM"), by

its attorneys, Katten Muchin Rosenman, LLP, and Barris, Sott, Denn & Driker, PLLC, alleges as

follows:

I.   **NATURE OF THE ACTION**

1.     This action seeks a declaratory judgment and damages based on a long-running

arson scheme to defraud STATE FARM and other insurance carriers by submitting insurance

claims for alleged losses resulting from fires that were deliberately caused.  The scheme began at

least as early as 1992, involved dozens of fires that were caused for the purpose of making

fraudulent claims for fire damage with STATE FARM and other carriers, and is continuing

through the date of this Complaint.

2.     At the heart of the scheme are groups of property owners or renters who acted in

concert and are linked to one another as relatives, friends, neighbors, or acquaintances (the

"Fraudulent Claimants").  Nearly all of the Fraudulent Claimants live in the area of Flint,

Michigan, and all of them submitted claims to STATE FARM or other insurance carriers for damages allegedly caused by fire to property that they purportedly owned or rented.  In fact, as the Fraudulent Claimants well knew, the fires at issue were deliberately caused for the sole purpose of recovering insurance proceeds.  At least twelve of the Fraudulent Claimants in this scheme caused the submission of claims to, and the receipt of payments from, STATE FARM (the "Individual Defendants").

3.      In well over half of the claims submitted to STATE FARM, the Individual Defendants employed the services of a public adjuster, Allied & Associates, Inc. ("ALLIED"), and its president, Gary Lappin ("LAPPIN").  Public adjusters represent insureds in connection with property insurance claims, typically negotiating with carriers and preparing claims on the insured's behalf.  ALLIED and LAPPIN performed that function for, and acted in concert with, Individual Defendants, and were instrumental to the scheme by presenting to STATE FARM and other carriers insurance claims that ALLIED and LAPPIN knew to be fraudulent, and by knowingly facilitating the payment of fraudulently obtained insurance proceeds from STATE FARM and other carriers.

4.      The fraudulent claims that the Individual Defendants, ALLIED and LAPPIN caused to be submitted to STATE FARM (the "Fraudulent State Farm Claims"), and the amounts paid by STATE FARM on each claim, are described in paragraphs 35 through 72 below and in Appendix A hereto.

5.      Because any payments made by STATE FARM in connection with the Fraudulent State Farm Claims resulted from fires that were deliberately caused for the purpose of obtaining insurance proceeds, STATE FARM seeks (a) a judgment declaring that the Individual Defendants are not entitled to collect benefits under the policies underlying the Fraudulent State

2

Farm Claims, and that the policies underlying the Fraudulent State Farm Claims are void; and (b) damages in excess of $1 million.

## II.   JURISDICTION AND VENUE

6.     Pursuant to 28 U.S.C. § 1332(a)(1), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all of the defendants reside in this district, and a substantial part of the events or omissions giving rise to the claims alleged herein occurred within this district.

## III.   PARTIES

### A.     Plaintiff

8.     Plaintiff STATE FARM is a corporation incorporated under the laws of the State of Illinois, with its principal place of business in Bloomington, Illinois. It is licensed and engages in the business of insurance in virtually every state.

### B.     Defendants

9.     DERWIN SYKES is a citizen and resident of the State of Michigan.

10.     JANEL SYKES is a citizen and resident of the State of Michigan.

11.     KRISTY JACKSON is a citizen and resident of the State of Michigan.

12.     APRIL CONWAY is a citizen and resident of the State of Michigan.

13.     LINDA HUNTER is a citizen and resident of the State of Michigan.

14.     BRUCE GOODMAN is a citizen and resident of the State of Michigan.

15.     JOHNNIE GOODMAN, SR., is a citizen and resident of the State of Michigan.

16.     JOHNNIE GOODMAN, JR., is a citizen and resident of the State of Michigan.

17.     LORETTA TURNBOW is a citizen and resident of the State of Michigan.

18.     LYNETTE HURT-HATTER is a citizen and resident of the State of Michigan.

19.     KENYATTA MILLER is a citizen and resident of the State of Michigan.

20.     LORAINA CHAPMAN is a citizen and resident of the State of Michigan.

21.     ALLIED is a corporation incorporated under the laws of the State of Michigan, with its principal place of business in Flint, Michigan.  It is licensed and engages in the business of public adjusting.

22.     LAPPIN is the president of ALLIED and a citizen and resident of the State of Michigan.

## IV.     ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### A.     The State Farm Policies Underlying The Fraudulent State Farm Claims

23.     There are three types of STATE FARM insurance policies underlying the Fraudulent State Farm Claims.  Each policy provides coverage for accidental losses caused by fire, under which Individual Defendants have sought or in the future may seek benefits.

24.     The first type of STATE FARM insurance policy underlying the Fraudulent State Farm Claims is a Homeowners Policy, Form FP-7955, issued by State Farm Fire and Casualty Company, a representative copy of which is attached as Appendix B hereto.  The other two policies are a Renters Policy, Form FP-7954, issued by State Farm Fire and Casualty Company, a representative copy of which is attached as Appendix C hereto, and a Rental Dwelling Policy, Form FP-8103.3, also issued by State Farm Fire and Casualty Company, a representative copy of which is attached as Appendix D hereto.

25.     Each of these policies limits coverage to "accidental direct physical loss" to the covered property.  Each of the policies also contains the following Conditions:

- **Intentional Acts.**  If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining

4

insurance benefits, then this policy is void and we will not pay you or any other insured for this loss.

- **Concealment or Fraud.** This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

B.     **The Fraudulent State Farm Claims**

26.     As the defendants knew, the crime of arson often leaves inconclusive physical evidence in its wake.  As a result, any given fraudulent claim – if viewed in isolation – would not necessarily reveal that the underlying fire had been deliberately caused for the purpose of recovering insurance proceeds.  Instead an arson scheme may become apparent only after seemingly unrelated fires and claims are pieced together, revealing a common fraudulent design.  For that reason, the Fraudulent Claimants submitted fraudulent claims under many names for many properties to many insurance carriers, thereby preventing STATE FARM from discovering the scheme.

27.     Ultimately, STATE FARM was able to piece together claim information for more than 100 claims submitted by the Fraudulent Claimants.  Viewed together, the claims exposed the interrelationship among the Individual Defendants, ALLIED, LAPPIN, and other Fraudulent Claimants, and lay bare the long-running arson scheme that they perpetrated against STATE FARM and other carriers.

28.     ALLIED and LAPPIN represented Fraudulent Claimants in over 40 fraudulent claims, including 15 of the 19 Fraudulent State Farm Claims.  As the scheme progressed, ALLIED and LAPPIN knew what State Farm and the other carriers would not have known:  that closely related Fraudulent Claimants submitted dozens of fire claims to multiple carriers for

multiple properties, the vast majority of which were concentrated within the area of Flint, Michigan; that no injuries were reported, or that the residents were absent at the time of the fire, in nearly every claim; and that the Fraudulent Claimants obtained insurance coverage on dozens of properties a short time before the fires occurred.

29.     In fact, of the more than 40 fraudulent claims in which ALLIED was the public adjuster, over 70% involved Fraudulent Claimants who obtained coverage within a year before the fire.  In one such claim, the Fraudulent Claimant obtained coverage 13 days before the fire occurred; in another claim, five days before; and in another claim, on the very same day.  The latter claim is described in Item 2c of Appendix A.  It was presented on behalf of DERWIN SYKES, who was responsible for submitting, together with his family and associates, dozens of fraudulent claims to STATE FARM and other carriers.

30.     A former girlfriend of DERWIN SYKES testified under oath that DERWIN had been setting fires for the past 20 years, and that he routinely went to LAPPIN for large sums of cash.  She further testified that SYKES, LAPPIN, and others had convened a meeting with JANEL SYKES, DERWIN's wife, for the purpose of "keeping JANEL quiet" about the fires that had been set.  The former girlfriend added that DERWIN SYKES said that LAPPIN, JANEL's landlord, BRUCE GOODMAN, and DERWIN SYKES needed to "stick together" after STATE FARM requested the deposition testimony of LAPPIN, BRUCE GOODMAN, and others.

31.     DERWIN SYKES also brought fraudulent claimants to ALLIED and LAPPIN as part of the scheme.  SYKES testified under oath that he had dropped off ALLIED business cards with potential claimants, and that LAPPIN paid SYKES a "commission" if ALLIED ultimately received the claimants' business.

32.     Under Michigan law, public adjusters may "not employ a person to aid, directly or indirectly, in soliciting or adjusting a loss and shall not offer a fee, commission, or other

6

valuable consideration to a person to aid, directly or indirectly, in soliciting or adjusting a loss unless the adjuster regularly employs that person to so act for him or her and that person is licensed to act as an adjuster by the commissioner."  Mich. Ins. Code, § 500.1226(1).  On information and belief, DERWIN SYKES was never employed by ALLIED or licensed to act as an adjuster.

33.     In representing the Fraudulent Claimants, ALLIED and LAPPIN negotiated on their behalf with STATE FARM and other carriers to obtain reimbursement for property allegedly damaged in the fires, payment of additional living expenses, and other sums of money. As consideration, the Fraudulent Claimants agreed to pay ALLIED up to 10% of the final claim. With ALLIED and LAPPIN's assistance, dozens of Fraudulent Claimants obtained from various carriers approximately $2.3 million in insurance proceeds to which they were not entitled, as ALLIED and LAPPIN well knew.

34.     The scheme involved dozens of people, but it revolved around overlapping groups of Fraudulent Claimants connected by blood, marriage, friendship, business affiliation, and other relationships.  Two of the groups that were most closely associated with the Fraudulent State Farm Claims, namely the Sykes and Goodman groups, submitted claims to STATE FARM as described in paragraphs 35 through 64 below.  ALLIED served as the public adjuster for many of those claims, and also for another six Fraudulent State Farm Claims as described in paragraphs 65 through 72 below.

## The Sykes Group Fires

35.     DERWIN and JANEL SYKES, who were married at times relevant to this Complaint, either directly or through their family and associates (collectively, the "Sykes Group") deliberately caused fires to occur on properties insured by STATE FARM and other carriers, and then caused the submission of insurance claims for fire damage to such properties.

36.     The Sykes Group was involved in dozens of fires.  Among them were at least seven claims submitted to STATE FARM, as set forth in paragraphs 37 through 50 below and in Appendix A.

*State Farm Claims In Which Janel Sykes Was The Named Insured*

37.     JANEL SYKES was the named insured in a claim reported to STATE FARM regarding a fire on July 24, 2006 (the "7/24/06 Fire").  The fire occurred at 6509 Fleming in Flint, Michigan, and was allegedly caused by a candle.  **This claim (State Farm Claim No. 22-M345-889) is described in Item 1 of Appendix A**.

> a.     The policy under which the 7/24/06 Fire claim was submitted had an inception date of June 1, 2006, seven weeks before the reported fire.

> b.     A long-time acquaintance of JANEL SYKES (and neighbor of DERWIN SYKES) testified under oath that JANEL SYKES said she planned to set a fire at the house on Fleming, and that she was about to "cash in" on the house.

> c.     ALLIED was the public adjuster for this claim.

38.     JANEL SYKES was the named insured in a claim reported to STATE FARM regarding a fire on February 26, 2007 (the "2/26/07 Fire").  The fire occurred at 3420 West Mott Street in Flint, Michigan, and was allegedly caused by smoking.  **This claim (State Farm Claim No. 22-M366-958) is described in Item 2 of Appendix A**.

> a.     The policy under which the 2/26/07 Fire claim was submitted had an inception date of February 1, 2007, 25 days before the reported fire.

> b.     ALLIED was the public adjuster for this claim.

> c.     A former girlfriend of DERWIN SYKES testified under oath that DERWIN told her that JANEL set the house on fire.

39.     DERWIN SYKES was the named insured in at least three fire claims submitted to another carrier, Michigan Basic.  All of those claims involved properties in Flint, Michigan, and ALLIED was the public adjuster for all of them.  Those claims are described in Items 2a, 2b, and 2c in Appendix A.

*State Farm Claims In Which Kristy Jackson Was The Named Insured*

40.     KRISTY JACKSON is JANEL SYKES's half-sister and DERWIN SYKES's sister-in-law.

41.     KRISTY JACKSON was the named insured in a claim reported to STATE FARM regarding a fire on March 1, 2004 (the "3/01/04 Fire").  The fire occurred at 922 Oak Street #2 in Flint, Michigan, and was allegedly electrical in origin.  **This claim (State Farm Claim No. 22-M264-083) is described in Item 3 of Appendix A**.

        a.     The policy under which the 3/01/04 Fire claim was submitted had an inception date of January 24, 2004, five weeks before the reported fire.

        b.     ALLIED was the public adjuster for this claim.

42.     KRISTY JACKSON was the named insured in a claim reported to STATE FARM regarding a fire on July 18, 2006 (the "7/18/06 Fire").  The fire occurred at 1517 Iowa Street in Flint, Michigan, and was allegedly caused by cooking.  **This claim (State Farm Claim No. 22-M347-699) is described in Item 4 of Appendix A.**

        a.     A former girlfriend of DERWIN SYKES testified under oath that KRISTY JACKSON admitted setting a fire at JACKSON's house, which the former girlfriend believed was located on Iowa Street, and that DERWIN SYKES said the fire had been set by KRISTY JACKSON's boyfriend.

        b.     ALLIED was the public adjuster for this claim.

43. KRISTY JACKSON was the named insured in a claim reported to STATE FARM regarding a fire on October 19, 2007 (the "10/19/07 Fire"). The fire occurred at 1517 Iowa Street in Flint, Michigan – the same location as the 7/18/06 Fire – and was also allegedly caused by cooking. **This claim (State Farm Claim No. 22-M389-280) is described in Item 5 of Appendix A.**

     a. ALLIED was the public adjuster for this claim.

44. At times relevant to the Complaint, KRISTY JACKSON's manager at work was APRIL CONWAY, who was involved in the fire claim described in paragraph 45 below.

*State Farm Claim in Which April Conway Was the Named Insured*

45. APRIL CONWAY was the named insured in a claim reported to STATE FARM regarding a fire on April 8, 2007 (the "4/8/07 Fire"). The fire occurred at 3105 Wisner in Flint, Michigan. **This claim (State Farm Claim No. 22-M370-820) is described in Item 6 of Appendix A.**

     a. ALLIED was the public adjuster for this claim.

46. APRIL CONWAY is the sister of Leroy Conway. Leroy Conway was the named insured in at least two fire claims submitted to MI Basic for properties in Flint and Mt. Morris, Michigan. Those claims are described in Items 6a and 6b of Appendix A.

47. APRIL CONWAY is the daughter of Glenda Hunter. Glenda Hunter was the named insured in at least three fire claims for properties in Flint, Michigan. Those claims are described in Item 6c, 6d, and 6e of Appendix A.

48. APRIL CONWAY is the niece of LINDA HUNTER.

*State Farm Claim in Which Linda Hunter Was the Named Insured*

49. LINDA HUNTER was the named insured in a claim reported to STATE FARM regarding a fire on April 4, 2007, and was allegedly caused by cooking. The fire occurred at

3605 Lawndale in Flint, Michigan.  **This claim (State Farm Claim No. 22-M370-556) is described in Item 7 of Appendix A.**

50.     LINDA HUNTER's sister is Glenda Hunter, who, as noted in paragraph 47 above, was the named insured in at least three fire claims for properties in Flint, Michigan.

## The Goodman Group Fires

51.     At times relevant to the Complaint, BRUCE GOODMAN was a friend of DERWIN SYKES and the landlord of JANEL SYKES.  BRUCE GOODMAN, together with his father, JOHNNIE GOODMAN, SR., his brother, JOHNNIE GOODMAN, JR., his associates and other members of his family (collectively, the "Goodman Group"), deliberately caused fires to occur on properties insured by STATE FARM and other carriers, and then caused the submission of insurance claims for fire damage to such properties.

52.     The Goodman Group was involved in dozens of fires.  Among them were at least six claims submitted to STATE FARM, as set forth in paragraphs 53 through 64 below and in Appendix A.

*State Farm Claims In Which Bruce Goodman Was The Named Insured*

53.     BRUCE GOODMAN was the named insured in a claim reported to STATE FARM regarding a fire on September 22, 2007 (the "9/22/07 Fire").  The fire occurred at 510 West Bishop in Flint, Michigan.  **This claim (State Farm Claim No. 22-M387-122) is described in Item 8 of Appendix A.**

54.     BRUCE GOODMAN was the named insured in a claim reported to STATE FARM regarding a fire on December 4, 2008 (the "12/4/08 Fire").  The fire occurred at 510 West Bishop in Flint, Michigan – the same location as the 9/22/07 Fire.  **This claim (State Farm Claim No. 22-M423-300) is described in Item 9 of Appendix A.**

11

55.     BRUCE GOODMAN was the named insured in at least two other fire claims submitted to Allstate for properties in Flint, Michigan. Those claims are described in Items 9a and 9b of Appendix A.

56.     BRUCE GOODMAN is the brother of JOHNNIE GOODMAN, JR., who was the named insured in at least three other fire claims submitted to various insurance carriers for properties in Flint, Michigan. Those claims are described in Items 9c, 9d, and 9e of Appendix A.

57.     BRUCE GOODMAN is the son of JOHNNIE GOODMAN, SR., who was the named insured in at least nine other fire claims submitted to various insurance carriers for properties in Flint, Michigan. Those claims are described in Items 9f through 9n of Appendix A.

58.     BRUCE GOODMAN is the nephew of Marilyn Goodman. Marilyn Goodman was the named insured in at least two fire claims submitted to insurance carriers for properties in Flint, Michigan. Those claims are described in Items 9o and 9p of Appendix A.

59.     BRUCE GOODMAN is a cousin of Alonzo Goodman, who was the named insured in at least two fire claims submitted to Allstate and Harleysville for properties in Flint, Michigan. Those claims are described in Items 9q and 9r of Appendix A. Alonzo Goodman also was the named insured in a fire claim submitted to MI Basic, described in paragraph 60(c) below and in Item 10a of Appendix A. At times relevant to the Complaint, Alonzo Goodman was the landlord of LORETTA TURNBOW, and he worked with Oscar Hurt, the father of LYNETTE HURT-HATTER.

*State Farm Claim In Which Loretta Turnbow Was The Named Insured*

60.     LORETTA TURNBOW was the named insured in a claim reported to STATE FARM regarding a fire on September 17, 2006 (the "9/17/06 Fire"). The fire occurred at 129 Green Street in Flint, Michigan, which TURNBOW was renting from Alonzo Goodman. **This claim (State Farm Claim No. 22-M353-306) is described in Item 10 of Appendix A.**

a.  The renter's insurance policy under which the 9/17/06 Fire claim was submitted had an inception date of February 2, 2006, approximately seven and a half months before the reported fire.

b.  ALLIED was the public adjuster for this claim.

c.  Alonzo Goodman, TURNBOW's landlord, obtained his own fire insurance policy with MI Basic to cover the property, and then, after the 9/17/06 fire, submitted a claim under that policy. That claim is described in Item 10a of Appendix A.

*State Farm Claim In Which Lynette Hurt-Hatter Was The Named Insured*

61.  LYNETTE HURT-HATTER was the named insured in a claim reported to STATE FARM regarding a fire on March 26, 2009 (the "3/26/09 Fire"). The fire occurred at 722 Loyola in Flint, Michigan. **This claim (State Farm Claim No. 22-M432-891) is described in Item 11 of Appendix A.**

a.  ALLIED was a public adjuster for this claim.

*State Farm Claim In Which Kenyatta Miller Was The Named Insured*

62.  At times relevant to the Complaint, BRUCE GOODMAN's brother, Johnnie Goodman Jr., was the landlord of Angelique Lowe. Lowe was the named insured in a fire claim submitted to Allstate for a property in Flint, Michigan, described in Item 12b of Appendix A. The property involved in that claim was also the location of two other reported fires for which JOHNNIE GOODMAN, SR., was the named insured. The claims associated with those fires are described in Items 9l and 9m of Appendix A. Lowe's boyfriend was Derrick Mayfield, who was the landlord of KENYATTA MILLER.

63.  KENYATTA MILLER was the named insured in a claim reported to STATE FARM regarding a fire on May 12, 2008 (the "5/12/08 Fire"). The fire occurred at 209 Patterson

13

in Flint, Michigan, which MILLER was renting from Mayfield. **This claim (State Farm Claim No. 22-M406-127) is described in Item 12 of Appendix A.**

    a.    The renter's insurance policy under which the 5/12/08 Fire claim was submitted had an inception date of April 16, 2008, 26 days before the reported fire.

    b.    ALLIED was the public adjuster for this claim.

    c.    Mayfield, MILLER's landlord, purchased the house on Patterson approximately two months before the 5/12/08 Fire. Shortly after the purchase, Mayfield obtained his own fire insurance policy with Grange Mutual to cover the property, and then, after the 5/12/08 fire, submitted a claim under that policy. That claim is described in Item 12a of Appendix A.

*State Farm Claim In Which Loraina Chapman Was The Named Insured*

64.    LORAINA CHAPMAN was the named insured in a claim reported to STATE FARM regarding a fire on December 17, 2007 (the "12/17/07 Fire"). The fire occurred at 4402 Warrington in Flint, Michigan. **This claim (State Farm Claim No. 22-M393-509) is described in Item 13 of Appendix A.**

    a.    The policy under which the 12/17/07 Fire claim was submitted had an inception date of 5/23/2006, approximately 18 months before the reported fire.

    b.    LORAINA CHAPMAN previously lived in a house that at one time was owned by JOHNNIE GOODMAN, SR.

**Additional Fraudulent State Farm Claims**
**In Which Allied And Lappin Acted As Public Adjuster**

*State Farm Claim In Which Levaughn Johnson Was The Named Insured*

65.     Levaughn Johnson was the named insured in a claim reported to STATE FARM regarding a fire on May 1, 2007 (the "5/01/07 Fire").  The fire occurred at 2708 Iroquois, in Flint, Michigan.  **This claim (State Farm Claim No. 22-M373-220) is described in Item 14 of Appendix A.**

        a.     The policy under which the 5/01/07 Fire claim was submitted had an inception date of July 20, 2006, ten months before the reported fire.

        b.     ALLIED was the public adjuster for this claim.

66.     Levaughn Johnson was the girlfriend of Quaashie Weatherly, from whom she once purchased a house.  Weatherly was the named insured in two fire claims submitted to MI Basic for a property in Flint, Michigan.  Those claims are described in Items 14a and 14b of Appendix A.

67.     Weatherly's sister was Chandra Williams-Woods.  Williams-Woods rented the property at 2708 Iroquois from Levaughn Johnson, and submitted a claim to United Casualty for the same fire.  That claim is described in Item 14c of Appendix A.

*State Farm Claim In Which Niketa Waybrandt Was The Named Insured*

68.     Niketa Waybrandt was the named insured in a claim reported to STATE FARM regarding a fire on November 19, 2007 (the "11/19/07 Fire").  The fire occurred at 1309 Mackin in Flint, Michigan.  **This claim (State Farm Claim No. 22-M391-619) is described in Item 15 of Appendix A**.

        a.     The policy under which the 11/19/07 Fire claim was submitted had an inception date of October 16, 2007, 33 days before the reported fire.

        b.     ALLIED was the public adjuster for this claim.

*State Farm Claim In Which Gulunda Holmes Was The Named Insured*

69.   Gulunda Holmes  was the named insured in a claim reported to STATE FARM regarding a fire on February 25, 2007 (the "02/25/07 Fire").  The fire occurred at 214 West Stewart Flint, Michigan.  **This claim (State Farm Claim No. 22-M366-871) is described in Item 16 of Appendix A**.

a.   ALLIED was the public adjuster for this claim.

*State Farm Claim In Which Edward Artis Was The Named Insured*

70.   Edward Artis was the named insured in a claim reported to STATE FARM regarding a fire on October 6, 2007 (the "10/06/07 Fire").  The fire occurred at 1127 West Kurtz in Flint, Michigan.  **This claim (State Farm Claim No. 22-M388-121) is described in Item 17 of Appendix A.**

a.   The policy under which the 10/06/07 Fire claim was submitted had an inception date of February 12, 2007, approximately 8 months before the reported fire.

b.   Edward Artis was the named was the named insured in at least two other fire claims submitted to insurance carriers in Flint, Michigan, one a house fire described in Item 17a of Appendix A, and one a car fire described in Item 17b of Appendix A.

c.   ALLIED was the public adjuster for this claim.

*State Farm Claims In Which Tammy McIntosh Was The Named Insured*

71.   Tammy McIntosh was the named insured in a claim reported to STATE FARM regarding a fire on April 22, 2007 (the "04/22/07 Fire").  The fire occurred at 2621 Clement in Flint, Michigan.  **This claim (State Farm Claim No. 22-M372-082) is described in Item 18 of Appendix A**.

      a.      The policy under which the 04/22/07 Fire claim was submitted had an inception date of October 20, 2006, approximately six months before the reported fire.

      b.      ALLIED was the public adjuster for this claim.

72.     Tammy McIntosh was the named insured in a claim reported to STATE FARM regarding a fire on June 18, 2010 (the "6/18/10 fire").  The fire occurred at 1947 Hosler in Flint, Michigan.  **This claim (State Farm Claim No. 22-M466-983) is described in Item 19 of Appendix A.**

      a.      The policy under which the 06/18/10 Fire claim was submitted had an inception date of January 22, 2010, approximately six months before the reported fire.

      b.      ALLIED was the public adjuster for this claim.

**C.**     **State Farm's Justifiable Reliance**

73.     State Farm was induced to pay in excess of $1.2 million based on the Fraudulent State Farm Claims.

74.     In each of the Fraudulent State Farm Claims that they caused to be submitted, the Individual Defendants represented falsely that the fires at issue were accidental and not intentionally caused for the purpose of obtaining insurance benefits, and deliberately failed to inform STATE FARM that the fires had, in fact, been intentionally caused for that purpose. Likewise, in the Fraudulent State Farm Claims for which ALLIED was the public adjuster, ALLIED and LAPPIN represented falsely that the fires at issue were accidental and not intentionally caused for the purpose of obtaining insurance benefits, and deliberately failed to inform STATE FARM that the fires had, in fact, been intentionally caused for that purpose.

75.     These material misrepresentations and omissions were designed to and did cause STATE FARM to justifiably rely on them.   Based upon the defendants' material misrepresentations, omissions, and other affirmative acts to conceal their fraud from STATE FARM, STATE FARM did not discover and should not have reasonably discovered that its damages were attributable to fraud until shortly before it filed this complaint.   In addition, despite STATE FARM's diligence in uncovering the fraud scheme, defendants' material misrepresentations and fraudulent concealment prevented STATE FARM from uncovering the fraud at the time the Fraudulent State Farm Claims were submitted, thereby equitably tolling any statute of limitations period applicable in this action.

## V.    CLAIMS FOR RELIEF

### First Cause of Action
### Declaratory Judgment – 28 U.S.C. § 2201

(Against all Individual Defendants)

76.     STATE FARM incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 75 above.

77.     There is an actual case and controversy between STATE FARM, on the one hand, and the Individual Defendants, on the other, as to claims submitted by the Individual Defendants seeking benefits under the policies underlying the Fraudulent State Farm Claims.   Some of the policies underlying the Fraudulent State Farm Claims remain in effect.

78.     STATE FARM contends that the Individual Defendants are not entitled to benefits under the policies because: (i) the losses at issue were not caused by accidental fire; (ii) the losses at issue were intentionally caused or procured for the purpose of recovering insurance proceeds; (iii) the Individual Defendants intentionally concealed or misrepresented material facts regarding the Fraudulent State Farm Claims, namely that the underlying fires were deliberately caused for the purpose of recovering insurance proceeds.

79.     Accordingly, STATE FARM seeks a judgment:

(i)     declaring that the Individual Defendants are not entitled to collect benefits under the policies underlying the Fraudulent State Farm Claims; and

(ii)    declaring that the policies underlying the Fraudulent State Farm Claims are void.

### Second Cause of Action
### <u>Common Law Fraud</u>

(Against Derwin Sykes, Janel Sykes, Kristy Jackson, April Conway, and Linda Hunter)

80.     STATE FARM incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 79 above.

81.     DERWIN SYKES, JANEL SYKES, KRISTY JACKSON, APRIL CONWAY, AND LINDA HUNTER (collectively, the "Sykes Group Defendants") acted in concert to intentionally and knowingly make false and fraudulent statements of material fact to STATE FARM, and deliberately failed to disclose material facts to STATE FARM, by causing to be submitted the Fraudulent State Farm Claims described in paragraphs 37 through 50 above.  In each of those Fraudulent State Farm Claims, the Sykes Group Defendants represented falsely that the fires at issue were accidental and not intentionally caused for the purpose of obtaining insurance benefits, and deliberately failed to inform STATE FARM that the fires had been intentionally caused for that purpose, when, in fact, the Sykes Group Defendants knew that the fires had been so caused.

82.     The Sykes Group Defendants made these false and fraudulent statements and material omissions to induce STATE FARM to pay insurance benefits under the policies, and acted in concert with the other defendants for the common purpose of substantially profiting from the false and fraudulent claims.

83.     STATE FARM justifiably relied on the Sykes Group Defendants' false and fraudulent misrepresentations and omissions, and as a proximate result has incurred damages of more than $370,000 as a result of those fraudulent claims alone.

84.     The Sykes Group Defendants' extensive fraudulent conduct entitles STATE FARM to recover exemplary damages.

**Third Cause of Action**
**Unjust Enrichment**

(Against Derwin Sykes, Janel Sykes, Kristy Jackson, April Conway, and Linda Hunter)

85.     STATE FARM incorporates by reference as if set forth in full herein the allegations contained in paragraphs 1 through 84.

86.     When STATE FARM paid the Fraudulent State Farm Claims, it reasonably believed that those claims were legitimate and based upon fires that were not deliberately caused for the purpose of obtaining insurance proceeds.

87.     STATE FARM paid the Sykes Group Defendants more than $370,000, reasonably believing it was obligated to do so.

88.     STATE FARM's payments to the Sykes Group Defendants constitute a benefit that they voluntarily accepted.

89.     The Sykes Group Defendants wrongfully obtained payments from STATE FARM through their fraudulent conduct.

90.     The Sykes Group Defendants' retention of these benefits violates fundamental principles of justice, equity and good conscience.

**Fourth Cause of Action**
**Common Law Fraud**

(Against Bruce Goodman, Johnnie Goodman, Sr., Johnnie Goodman, Jr.,
Loretta Turnbow, Lynette Hurt-Hatter, Kenyatta Miller, and Loraina Chapman)

91.     STATE FARM incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 90 above.

92.     BRUCE GOODMAN, JOHNNIE GOODMAN, SR., JOHNNIE GOODMAN, JR., LORETTA TURNBOW, LYNETTE HURT-HATTER, KENYATTA MILLER, and LORAINA CHAPMAN (collectively, the "Goodman Group Defendants") acted in concert to intentionally and knowingly make false and fraudulent statements of material fact to STATE FARM, and deliberately failed to disclose material facts to STATE FARM, by causing to be submitted the Fraudulent State Farm Claims described in paragraphs 51 through 64 above.  In each of those Fraudulent State Farm Claims, the Goodman Group Defendants represented falsely that the fires at issue were accidental and not intentionally caused for the purpose of obtaining insurance benefits, and deliberately failed to inform STATE FARM that the fires had been intentionally caused for that purpose, when, in fact, the Goodman Group Defendants knew that the fires had been so caused.

93.     The Goodman Group Defendants made these false and fraudulent statements and material omissions to induce STATE FARM to pay insurance benefits under the policies, and acted in concert with the other defendants for the common purpose of substantially profiting from the false and fraudulent claims.

94.     STATE FARM justifiably relied on the Goodman Group Defendants' false and fraudulent misrepresentations and omissions, and as a proximate result has incurred damages of more than $230,000 as a result of those fraudulent claims alone.

95.    The Goodman Group Defendants' extensive fraudulent conduct entitles STATE FARM to recover exemplary damages.

### Fifth Cause of Action
### Unjust Enrichment

(Against Bruce Goodman, Johnnie Goodman, Sr., Johnnie Goodman, Jr.,
Loretta Turnbow, Lynette Hurt-Hatter, Kenyatta Miller, and Loraina Chapman)

96.    STATE FARM incorporates by reference as if set forth in full herein the allegations contained in paragraphs 1 through 95.

97.    When STATE FARM paid the Fraudulent State Farm Claims, it reasonably believed that those claims were legitimate and based upon fires that were not deliberately caused for the purpose of obtaining insurance proceeds.

98.    STATE FARM paid the Goodman Group Defendants more than $230,000, reasonably believing it was obligated to do so.

98.    STATE FARM's payments to the Goodman Group Defendants constitute a benefit that they voluntarily accepted.

99.    The Goodman Group Defendants wrongfully obtained payments from STATE FARM through their fraudulent conduct.

100.    The Goodman Group Defendants' retention of these benefits violates fundamental principles of justice, equity and good conscience.

### Sixth Cause of Action
### Common Law Fraud

(Against Allied & Associates, Inc., and Gary Lappin)

101.    STATE FARM incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 100 above.

102.    In connection with 15 of the Fraudulent State Farm Claims (described in Items 1-6, 10, 11, 12, and 14-19), ALLIED and LAPPIN, on behalf of the Individual Defendants and

acting in concert with them, negotiated with and submitted claim-related documents to STATE FARM for the purpose of obtaining insurance proceeds from STATE FARM. Such documents included, but were not limited to, inventories of property allegedly damaged in the fires at issue and estimates of damages allegedly resulting from those fires.

103. In negotiating with and submitting claim-related documents to STATE FARM, ALLIED and LAPPIN represented falsely that the fires at issue were accidental and not intentionally caused for the purpose of obtaining insurance benefits, and deliberately failed to inform STATE FARM that the fires had been intentionally caused for that purpose, when, in fact, ALLIED and LAPPIN knew that the fires had been so caused.

104. ALLIED and LAPPIN made these false and fraudulent statements and material omissions to induce STATE FARM to pay insurance benefits under the policies, and acted in concert with the other defendants for the common purpose of substantially profiting from the false and fraudulent claims.

105. STATE FARM justifiably relied on ALLIED and LAPPIN's false and fraudulent misrepresentations and omissions, and as a proximate result has incurred damages of more than $1 million as a result of those fraudulent claims alone.

106. ALLIED and LAPPIN's extensive fraudulent conduct entitles STATE FARM to recover exemplary damages.

**Seventh Cause of Action**
**Unjust Enrichment**

(Against Allied & Associates, Inc., and Gary Lappin)

107. STATE FARM incorporates by reference as if set forth in full herein the allegations contained in paragraphs 1 through 106.

108. When STATE FARM paid the Fraudulent State Farm Claims, it reasonably believed that those claims were legitimate and based upon fires that were not deliberately caused

for the purpose of obtaining insurance proceeds. STATE FARM reasonably believed it was obligated to pay the claims.

109. ALLIED and LAPPIN retained part of the money paid by STATE FARM on the Fraudulent State Farm Claims.

110. STATE FARM's payments to ALLIED and LAPPIN constitute a benefit that they voluntarily accepted.

111. ALLIED and LAPPIN wrongfully obtained payments from STATE FARM through their fraudulent conduct.

112. ALLIED and LAPPIN's retention of these benefits violates fundamental principles of justice, equity and good conscience.

WHEREFORE, Plaintiff demands that a Judgment be entered in its favor:

(a) on its First Cause of Action, declaring that (i) the Individual Defendants are not entitled to collect benefits under the policies underlying the Fraudulent State Farm Claims, and (ii) the policies underlying the Fraudulent State Farm Claims are void;

(b) on its Second Cause of Action, for compensatory damages in an amount of at least $370,000 against DERWIN SYKES, JANEL SYKES, KRISTY JACKSON, APRIL CONWAY, and LINDA HUNTER, and exemplary damages in an amount to be determined at trial, plus interest;

(c) on its Third Cause of Action, for disgorgement of payments made by STATE FARM to the Sykes Group Defendants of at least $370,000;

(d) on its Fourth Cause of Action, for compensatory damages in an amount of at least $200,000 against BRUCE GOODMAN, JOHNNIE GOODMAN, SR., JOHNNIE GOODMAN, JR., LORETTA TURNBOW, LYNETTE HURT-HATTER, KENYATTA MILLER, and

LORAINA CHAPMAN, and exemplary damages in an amount to be determined at trial, plus interest;

(e)      on its Fifth Cause of Action, for disgorgement of payments made by STATE FARM to the Goodman Group Defendants of at least $200,000;

(f)      on its Sixth Cause of Action, for compensatory damages in an amount of at least $1 million against ALLIED and LAPPIN, and exemplary damages in an amount to be determined at trial, plus interest;

(g)      on its Seventh Cause of Action, for disgorgement of payments made by STATE FARM to ALLIED and LAPPIN in an amount to be determined at trial;

(h)      awarding Plaintiff its costs including reasonable attorneys' fees, and any other relief the Court deems just and proper.

### JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury.

STATE FARM FIRE AND CASUALTY COMPANY

By: /s/ Morley Witus
    MORLEY WITUS (P30895)
    Barris Sott Denn & Driker PLLC
    211 W. Fort Street 15th Floor
    Detroit, MI  48226-3281
    (313) 596-9308
    mwitus@bsdd.com

    ROSS O. SILVERMAN
    GIL M. SOFFER
    PATRICK C. HARRIGAN
    KATTEN MUCHIN ROSENMAN LLP
    525 West Monroe Street, Suite 1900
    Chicago, Illinois 60661-3693
    (312) 902-5200
    ross.silverman@kattenlaw.com
    gil.soffer@kattenlaw.com

Dated: :February 22, 2011    patrick.harrigan@kattenlaw.com

403345