UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATE FARM FIRE AND CASUALTY COMPANY,

                Plaintiff,

v.

ALLIED AND ASSOCIATES, GARY M. LAPPIN,
JANEL SYKES, DERWIN SYKES, KRISTY
JACKSON, APRIL CONWAY, LINDA HUNTER,
BRUCE GOODMAN, JOHNNIE GOODMAN, SR.,
JOHNNIE GOODMAN, JR., LORETTA TURNBOW,
LYNETTE HURT-HATTER, KENYATTA MILLER,
and LORAINA CHAPMAN,

                Defendants,

and

LYNETTE HURT-HATTER,

                Counter claimant,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

                Counter defendant.

_____/

Case Number 11-10710
Honorable David M. Lawson

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO DISMISS BY DEFENDANTS JOHNNIE GOODMAN, SR. AND
BRUCE GOODMAN, DENYING MOTION TO SEVER, DENYING DEFENDANT
JOHNNIE GOODMAN, JR.'S MOTION FOR SUMMARY JUDGMENT, AND
GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION
TO DISMISS DEFENDANT LYNETTE HURT-HATTER'S COUNTERCLAIM
OR FOR MORE DEFINITE STATEMENT**

       Plaintiff State Farm Fire and Casualty Company filed the present action alleging that the

defendants conspired to set fire to rental properties in order to submit fraudulent fire insurance

claims to State Farm and other insurers.  Defendants Johnnie Goodman, Sr., Bruce Goodman, and

Johnnie Goodman, Jr. responded with motions to dismiss or for summary judgment, arguing generally that the complaint does not state claims against them. Those defendants also filed a motion to sever the claims against them. And State Farm filed a motion to dismiss a counterclaim brought by one of the other defendants. The Court heard oral argument on those motions on June 27, 2011 and discussed some the complaint's shortcomings on the record. The motions were taken under advisement, and plaintiff subsequently was granted leave to amend. The amended complaint deletes a count for declaratory relief, adds no new counts, and attempts to fortify some of the factual allegations against the defendants. The Court permitted the defendants to direct their arguments to the allegations in the amended complaint without filing new motions to dismiss, and to supplement their briefs to address the newly-pleaded allegations if they chose. No new briefs were filed, and the motions are ready for decision. The Court concludes that the plaintiff has asserted a right to relief against all the defendants arising from a series of allegedly related transactions, so severance of the claims is not required at the present time; the amended complaint fails to state a claim for relief against Johnnie Goodman, Sr. and Johnnie Goodman, Jr., but it pleads a cognizable claim against Bruce Goodman; and defendant Hurt-Hatter's counter-complaint fails to state a claim for abuse of process but it does plead a claim of slander. Therefore, the Court will grant in part and deny in part Johnnie Goodman, Sr.'s and Bruce Goodman's motion to dismiss, grant Johnnie Goodman, Jr.'s motion for summary judgment, and grant in part and deny in part State Farm's motion to dismiss defendant Hurt-Hatter's counterclaim.

## I. Facts

State Farm alleges that the defendants, working together over the last eighteen years, defrauded State Farm by intentionally setting fire to their properties and submitting fraudulent

insurance claims for "accidental" fire damage to State Farm and other insurance carriers. State Farm alleges that although the insurance-fraud scheme involved dozens of people, all living in or around Flint, Michigan, it revolved around overlapping groups of individuals connected by blood, marriage, friendship, business affiliation, and other relationships. According to the amended complaint, two groups of individuals, the "Sykes group" and the "Goodman group" were the most closely associated with the fraud scheme. The Sykes group included Derwin Sykes and Janel Sykes, his then-wife, and others. The Goodman group consisted of Bruce Goodman (a friend of Derwin Sykes and landlord of Janel Sykes), Johnnie Goodman, Jr. (Bruce's brother), Johnnie Goodman, Sr., and others. A common feature of the two groups, according to the plaintiff, was the involvement of a public adjuster, Allied and Associates, Inc. (Allied) and its president, defendant Gary Lappin, who supposedly facilitated the submission of the fraudulent claims. State Farm says it paid in excess of $1.2 million in reliance on the defendants' fraudulent claims.

State Farm describes three types of State Farm insurance policies under which the fraudulent claims were submitted: homeowners policies, renters policies, and rental dwelling policies. All three of these policies limited coverage to "accidental direct physical loss" and included both an "intentional acts" exclusion clause and a "fraud and concealment" clause. Both purported to void the policies if those provisions were violated.

In nearly 80% of the claims submitted to State Farm (15 of 19), the defendants employed defendant Allied as their public adjuster. State Farm alleges that Allied and Lappin were integral to the scheme because they presented State Farm and the other carriers with insurance claims they knew to be fraudulent and facilitated the payment of those fraudulent claims. State Farm also alleges that Derwin Sykes brought fraudulent claimants to Allied and Lappin, Derwin Sykes testified

under oath that he furnished Allied's business cards to potential claimants, and Lappin paid Sykes a "commission" for claimants who engaged Allied. State Farm alleges that Allied's and Lappin's conduct violated Michigan's anti-solicitation statute, Mich. Comp. Laws § 500.1226(1) ("An adjuster for an insured shall not employ a person to aid . . . in soliciting or adjusting a loss and shall not offer or pay a fee, commission . . . .").

It appears that the heart of the plaintiff's case, at least at the pleading stage, comes from testimony by a witness described only as Derwin Sykes's former girlfriend. The plaintiff alleges that she has testified that Sykes has been setting fires for the past 20 years, he obtained cash for that activity from Lappin, the two met with Janel Sykes to "keep her quiet" about that activity, and Derwin Sykes told the girlfriend that he, Lappin, and Bruce Goodwin needed to "stick together" when State Farm began seeking statements from them. She also testified that Derwin Sykes told her that he had been paid when he started a fire "to do an insurance job" on a house located on East Baltimore Street in Flint, Michigan.

State Farm's amended complaint alleges other suspicious circumstances that led it to believe that a conspiracy was afoot. For instance, in over 70% of the more than 40 "fraudulent" claims on which Allied worked, the claimant had obtained insurance coverage within one year of the fire. In one instance, a claimant purchased insurance 13 days before the fire, another five days before, and one the very same day of the fire. As for specific fire losses, State Farm describes separately claims made by members of the "Sykes group" and the "Goodman group."

### A. Sykes Group Fires

State Farm alleges that Derwin Sykes and Janel Sykes deliberately started several fires on properties insured by State Farm and submitted insurance claims for the damage. State Farm alleges

-4-

that Janel Sykes was the named insured for two fraudulent claims: one for $59,039.30 for a house on 6509 Fleming in Flint on July 24, 2006, and one for $49,242.16 for a house on 3420 W. Mott on February 26, 2007.  Allied was the public adjuster on both claims.  The fire at 6509 Fleming was allegedly caused by a candle, but the plaintiff alleged that an acquaintance of Janel Sykes testified that Janel admitted planning to set a fire so she could "cash in" on the house.  The insurance policy became effective seven weeks before the fire.

The fire at 3420 W. Mott was allegedly caused by smoking, but Derwin Sykes's former girlfriend testified that Derwin said Janel started the fire.  The policy under which this claim was made had an inception date just 25 days before the fire.

State Farm alleges that Derwin Sykes submitted three fraudulent claims, two for a house on Winona in 1995 and 1997, respectively, and for a house on Kermit in 2005.  Allied was the public adjuster, but Michigan Basic Insurance Company was the insurance carrier.  State Farm paid out no money on those claims, although it has argued that Allied's involvement in the claims process supports its argument of a conspiracy.

The amended complaint also alleges that Kristy Jackson, Janel Syke's half-sister and Derwin Syke's sister-in-law, submitted three fraudulent claims to State Farm in 2004, 2006 and 2007.  Two separate properties were involved, and Allied was the public adjuster in each case.  State Farm says that the July 2006 fire was allegedly caused by cooking, but Derwin Sykes's former girlfriend testified that Jackson admitted setting a fire, and that Derwin Sykes said the fire had been set by Jackson's boyfriend.

State Farm also alleges that fraudulent fire loss claims were submitted by April Conway, who is Kristy Jackson's manager at work (one fire); Leroy Conway, April Conway's brother (two fires);

Glenda Hunter, April Conway's mother (three fires); and Linda Hunter, who is April Conway's aunt and Glenda Hunter's sister (one fire). Allied was the public adjuster in three of those fires. The fires occurred between 2001 and 2007.

### B. Goodman Group Fires

The "Goodman group" as identified by State Farm was responsible for submitting 27 claims for fire losses between 1992 and 2009. Not all the claims were submitted to State Farm, and Allied was the public adjuster on six of them. The plaintiff alleges that all the claims were fraudulent, but it does not say why. For instance, State Farm alleges that Bruce Goodman submitted claims in 1994, 2004, 2007, and 2008. The later two claims were for a house on Bishop and State Farm was the insurance carrier. Allstate was the carrier on the earlier two claims, each on different property. Allied was not the public adjuster for any of them.

Johnnie Goodman, Jr., Bruce Goodman's brother, was the named insured for three claims, all submitted to insurance carriers other than State Farm. Once again, Allied was not the public adjuster on those claims.

Johnnie Goodman, Sr., Bruce's and Johnnie Goodman, Jr.'s father, submitted nine claims between 1992 and 2007 on eight separate properties. None of those claims was submitted to State Farm. Allied was the public adjuster on two of the claims, one in 1992 and the other in 2008.

State Farm alleged that fraudulent claims were submitted by Marilyn Goodman, Bruce Goodman's aunt (two fires); Alonzo Goodman, Bruce Goodman's cousin and Loretta Turnbow's landlord (three fires); Lynette Hurt-Hatter, who State Farm says was connected to the scheme because her father worked with Alonzo Goodman (one fire); Kenyatta Miller, who rented a house from Derrick Mayfield (one fire); and Loraina Chapman, who previously lived in a house that at one

time was owned by Johnnie Goodman, Sr. (one fire).  Four of the fire losses were covered by State Farm.  The others involved other insurance carriers.  Allied was the public adjuster in five of those fires.  In addition, State Farm alleges that Johnnie Goodman, Sr. submitted a claim to Safeco Insurance Company in 2008 for a fire in a house on Cherrylawn.  Allied was the public adjuster for that claim.

### C. Other Fires for which Allied and Lappin Acted as Public Adjuster

State Farm alleges that Levaughn Johnson was the girlfriend of Quaashie Weatherly, from whom she once purchased a house.  Weatherly was the named insured in two fire claims submitted to Michigan Basic for a property in Flint, Michigan.  Weatherly's sister, Chandra Williams-Woods rented the property at 2708 Iroquois from Levaughn Johnson and submitted a claim to United Casualty for the same fire.  Johnson submitted his claim to State Farm.  Those claims were submitted between 2005 and 2007.

State Farm alleges that Niketa Waybrant, Gulunda Holmes, Edward Artis, and Tammy McIntosh all submitted fraudulent claims.  The losses occurred between 2005 and 2010 and involved seven separate properties.  State Farm was on the risk in five of them.

In the amended complaint, the plaintiff added allegations of the relationships shared by several of the defendants.  The plaintiff's key witness, Derwin Sykes's former girlfriend, told State Farm that Derwin and Bruce Goodwin were friends, and that Derwin was a partner with Alonzo Goodman in a business aimed at setting fires.  The amended complaint relates a conversation with Derwin Sykes about setting fire to a house on Baltimore Street in Flint believed to be owned by Johnnie Goodman, Jr., who submitted a claim along with his tenant.  The amended complaint also alleges that all of the Goodmans worked together on their rental properties, had keys to the premises

-7-

in common, and sometimes purchased hazard insurance for each other.  State Farm also alleges that Johnnie Goodman, Jr. benefitted from fire losses when burned-out tenants sought additional living expenses, which State Farm paid over to Goodman for another rental.

State Farm also alleges that Johnnie Goodman, Jr. is the pastor of a church that frequently took title to properties — more than forty — many of which experienced fire losses.  Goodman, Sr. owned between 40 and 50 rental properties in 2008.  Goodman, Jr. owned a construction company that performed repairs on some of the fire-damaged properties and was paid for its work by State Farm.

State Farm filed its complaint on February 22, 2011 seeking damages in excess of $1 million and a declaration that the individual defendants are not entitled to collect benefits under the policies for the fraudulent State Farm claims and that said policies are void.  State Farm asked for a declaratory judgment voiding certain policies (Count I), and alleged common law fraud as to Derwin Sykes, Janel Sykes, Kristy Jackson, April Conway, and Linda Hunter (the Sykes group less Glenda Hunter) (Count II), unjust enrichment against the same group (Count III), common law fraud against Bruce Goodman, Johnnie Goodman, Sr., Johnnie Goodman, Jr., Loretta Turnbow, Lynette Hurt-Hatter, Kenyatta Miller, and Loraina Chapman (the Goodman group less Marilyn Goodman, Alonzo Goodman, and Angelique Lowe) (Count IV), unjust enrichment against the same group (Count V); common law fraud against Allied & Associates, Inc. and Gary Lappin (Count VI), and unjust enrichment against Allied & Associates, Inc. and Gary Lappin (Count VII).  State Farm's theory is that the frequency and numerosity of the fire losses leads to the inevitable conclusion that the fires were deliberately set, and because of the relationship of the defendants and the common involvement of Allied and Lapin, the defendants either conspired together or were acting in concert.

In their joint motion to dismiss the counts against them, Bruce Goodman and Johnnie Goodman, Sr. argue that (1) State Farm cannot bring an action for declaratory judgment because it has not alleged that Bruce or Johnnie, Sr. had a policy of insurance with State Farm or that there is a pending claim filed by Bruce or Johnnie, Sr.; (2) the complaint fails to specify the role of each defendant in the fraud scheme; and (3) State Farm's unjust enrichment claim must be dismissed because Johnnie Goodman, Sr. never received an insurance payment and Bruce has a contract with State Farm, nullifying any potential to recover under an unjust enrichment theory. Bruce Goodman and Johnnie Goodman, Sr. also filed a motion to sever the claims against them from the Sykes group claims. In their motion to sever, these defendants point to the hardship of attending over 100 depositions on allegations that likely have no connection to them.

On March 24, 2011, Lynette Hurt-Hatter filed a counterclaim against State Farm for abuse of process and slander. State Farm moved to dismiss Hurt-Hatter's counter-complaint on the grounds that the counter-complaint fails to plead the elements of abuse of process, and it fails to allege any facts regarding the circumstances of the alleged defamatory statement.

On May 20, 2011, Johnnie Goodman, Jr. moved for summary judgment arguing that State Farm has failed to state a claim for declaratory relief against him, has not alleged its fraud claim with the required specificity, and is barred by the statute of limitations from bringing a fraud claim relating to 2221 N. Chevrolet, which was submitted in 1993.

After oral argument on those motions, the plaintiff filed an amended complaint on November 8, 2011. The amended complaint withdrew the claim for declaratory relief regarding the still-active State Farm policies (former Count I), added new factual allegations about the roles played by defendants Johnnie Goodman, Sr. and Johnnie Goodman, Jr., did not add any new claims, nor did

it add any new theories for relief.  The defendants answered the amended complaint, and the Court ordered that the outstanding dispositive motions were deemed to challenge the amended pleading. The Court permitted supplemental briefing, which none of the parties filed.  However, the issue of the sufficiency of the amended complaint was addressed in the briefing on the motion to amend, where the parties addressed the futility of the amendment.

## II.  Motions to dismiss

Bruce Goodman's and Johnnie Goodman, Sr.'s motion to dismiss was filed under Federal Rule of Civil Procedure 12(b)(6).  Johnnie Goodman, Jr.'s motion for summary judgment was filed under Rule 56, but he argues that the complaint fails to state a claim against him; therefore, the motion fits more appropriately under Rule 12(b)(6) and will be addressed as such.  The test required by that rule merits some discussion.

"The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)).  Under Rule 12(b)(6), the complaint is viewed in the light most favorable to plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of plaintiffs.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations."  *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997) (quoting *Columbia Nat'l Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions."  *Tatum*, 58 F.3d at 1109; *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 488 (6th Cir. 2009).

> To survive a motion to dismiss, [a plaintiff] must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal*, [556] U.S. [662], 129 S. Ct. 1937, 1949 (2009).

*Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

Under the new regime ushered in by *Twombly* and *Iqbal*, pleaded facts must be accepted by the reviewing court, but conclusions may not be credited unless they are plausibly supported by the pleaded facts. "[B]are assertions," such as those that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, can provide context to the factual allegations, but are insufficient to state a claim for relief and must be disregarded. *Iqbal*, 129 S. Ct. at 1951 (quoting *Twombly*, 550 U.S. at 555). However, as long as a court can "'draw the reasonable inference that the defendant is liable for the misconduct alleged,' a plaintiff's claims must survive a motion to dismiss." *Fabian*, 628 F.3d at 281 (quoting *Iqbal*, 129 S. Ct. at 1949).

A party must state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b); *see also Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010). The complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Ind. State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942-43 (6th Cir. 2009) (internal quotation marks omitted). In addition, a party must "allege the time, place, and content of the alleged misrepresentation on which

he or she relied; the fraudulent scheme; the fraudulent intent of [the other party]; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (internal citations omitted). Where there are multiple defendants, a claim must identify which of the defendants made the alleged misrepresentations. *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992).

It is plain from the amended complaint that State Farm has identified each of the fire loss claims as fraudulent statements. The plaintiff specified the statements, the speaker, and when and where the statements were made. The point of contention is the third element: why the statements were fraudulent. Johnnie Goodman, Sr. and Jr. and Bruce Goodman argue that there are no plausible allegations that the fires were intentionally set, or that they were part of a concert of action to deliberately burn real property and profit from the insurance proceeds. They also argue that State Farm failed to allege with particularity the role of each defendant in the fraud scheme.

### A. Johnnie Goodman, Sr.

Although State Farm does not allege that Johnnie Goodman, Sr. submitted any fraudulent insurance claims, it does allege that he took part in the larger conspiracy to defraud State Farm. But State Farm's only allegation in the original complaint concerning Johnnie Goodman, Sr.'s involvement was:

> Bruce Goodman is the son of Johnnie Goodman, Sr., who was the named insured in at least nine other fire claims submitted to various insurance carriers for properties in Flint, Michigan.

Compl. ¶ 57. The amended complaint does not add much. It states merely that Goodman, Sr. purchased and found a tenant for the house on Baltimore, he had keys in common with his sons to that house, he sent his son to buy insurance on some of his rental properties, he owned several rental

-12-

properties in 2008, and "Johnnie Goodman, Sr., alerts [Johnnie Goodman, Jr.] when there is a fire, and then Goodman, Jr. solicits the repair work for Kingdom Builders." Am. Compl. ¶¶ 38, 42, 43.

Even the most cursory review reveals that State Farm's amended complaint does not describe, except in the most conclusory terms, Johnnie Goodman, Sr.'s involvement in the fraud scheme, and certainly not with particularity. State Farm does not allege what action Johnnie Goodman, Sr. took or what statement he made to further the fraud scheme. Nor does State Farm allege what Johnnie Goodman, Sr. gained from the other defendants' decisions to file allegedly fraudulent insurance claims.

State Farm attempts to support its fraud claim against Johnnie Goodman, Sr. by invoking the doctrine of chances as described in *People v. Mardlin*, 487 Mich. 609, 790 N.W.2d 607 (2010). Its argument fails for several reasons. The Michigan Supreme Court resorted to that doctrine as a means of validating the introduction of evidence under Michigan Rule of Evidence 404(b). *See People v. VanderVliet*, 444 Mich. 52, 81 n.35, 508 N.W.2d 114, 129 n.35 (1993) (suggesting, for example that "[t]he man who wins the lottery once is envied; the one who wins it twice is investigated" (quoting *United States v. York*, 933 F.2d 1343, 1350 (7th Cir. 1991))). It described the concept as a "logical link" between "past acts or incidents that may be connected with a defendant and proper, noncharacter inferences that may be drawn from those events on the basis of their frequency." *Mardlin*, 487 Mich. at 617, 790 N.W.2d at 613. The court explained that "[u]nder this theory, as the number of incidents of an out-of-the-ordinary event increases in relation to a particular defendant, the objective probability increases that the charged act and/or the prior occurrences were not the result of natural causes." *Id.* at 616, 790 N.W.2d at 612-13. *Mardlin* itself concerned an arson prosecution in which there was evidence that the fire was intentionally set and

-13-

the prosecution offered other evidence that the defendant had been "associated" with four previous fires on which insurance claims were made. The court in that case did not suggest that the evidence of prior fires was sufficient to establish intentionality; it merely stated that the evidence was relevant on the point.

State Farm relies on the idea that the doctrine of chances creates a plausible inference of intentionality that establishes the existence of a large fraud scheme. Its argument misapplies the logic behind the doctrine of chances. Properly applied, the "doctrine" dispels the idea that serial unusual events can be dismissed as coincidence, and raises suspicion calling for further investigation. But to support the inference of concert of action or conspiracy, more is required.

Under Michigan law, "[a] plaintiff may proceed on the theory of concert of action if he or she can prove 'that all defendants acted tortiously pursuant to a common design.'" *Cousineau v. Ford Motor Co.*, 140 Mich. App. 19, 32, 363 N.W.2d 721, 728 (1985) (quoting *Abel v. Eli Lilly & Co.*, 418 Mich. 338, 311, 343 N.W.2d 164, 176 (1984)). The theory is based on a legal fiction that spreads responsibility for acts committed by individuals to all those who tacitly agree to the conduct. *Holliday v. McKeiver*, 156 Mich. App. 214, 216, 401 N.W.2d 278, 279-80 (1986); *Cousineau*, 140 Mich. App. at 32, 363 N.W.2d at 728 (quoting Prosser on Torts (4th ed), § 46, p. 292.). "However, the claim does not exist in a vacuum, the plaintiff must prove the underlying tortious conduct." *Doyle v. Detroit Dev. Real Estate, LLC*, No. 298354, 2011 WL 3594001, at *2 (Mich. Ct. App. Aug. 16, 2011) (citing *Jodway v. Kennametal, Inc.*, 207 Mich. App. 622, 631-32, 525 N.W.2d 883, 890 (1994)).

Similarly, "[t]o prevail with a civil conspiracy claim, a plaintiff must show the involvement of two or more people in a concerted action undertaken to accomplish an unlawful purpose or a

-14-

lawful purpose by unlawful means." *Demyanovich v. Cadon Plating & Coatings, LLC*, No. 10-15119, 2011 WL 3027901, at *6 (E.D. Mich. July 25, 2011) (citing *Mays v. Three Rivers Rubber Corp.*, 135 Mich. App. 42, 48, 352 N.W.2d 339, 342 (1984)). "'Under Michigan law, in a civil action for damages for conspiracy, "the gist or gravamen of the action is not the conspiracy but is the wrongful act causing the damage. The conspiracy standing alone without commission of acts causing damage would not be actionable."'" *Ibid.* (citing *Glidden Co. v. Jandernoa*, 5 F. Supp. 2d 541, 555 (W.D. Mich. 1998) (quoting *Roche v. Blair*, 305 Mich. 608, 614, 9 N.W.2d 861, 863 (1943))).

The amended complaint pleads facts that associate Johnnie Goodman, Sr. with several properties that suffered fire losses and on which insurance claims were made. It alleges no actual wrongful conduct against him, however. It does state allegations that one or two of the fires were intentionally set by someone else, but it does not allege that conduct is attributable to Goodman, Sr. The number of fires and claims indeed supports an inference that accidental fires were not coincidental, and those facts are consistent with the plaintiff's theory of liability against Goodman, Sr. However, under the current regime, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility . . . ." *Iqbal*, 129 S. Ct. at 1949.

Second, and more importantly, the inferences that State Farm would have the Court draw based on the doctrine of chances do not excuse State Farm from meeting the pleading requirements of Federal Rule of Civil Procedure 9(b). State Farm has not alleged fraud against Johnnie Goodman, Sr. with the particularity required by Rule 9(b).

-15-

Therefore, the Court will grant the motion to dismiss Johnnie Goodman, Sr. as a defendant in the case.

### B.  Bruce Goodman

State Farm alleges that Bruce Goodman submitted two fraudulent insurance claims to it and provides the claim numbers, the locations of the fires, the date of the fires, the policy inception dates, and the amount State Farm paid.  Both claims were for fires at a location on Bishop, one in 2007 and the other in 2008.  Ace Adjusting Co. was the public adjuster both times.

The amended complaint contains allegations that the number of Bruce Goodman's claim submissions negates the possibility of coincidence, and the plaintiff advances the same argument it has relied on as to Johnnie Goodman, Sr.  But the amended complaint also alleges conduct by Bruce Goodman with Derwin Sykes, who told his girlfriend that he, Lappin, and Bruce Goodman needed to "stick together" when State Farm began investigating the claims.  The allegations, therefore, provide a factual basis, albeit a thin one, to permit the inference of concert of action and conspiracy.  Therefore, the Court will deny Bruce Goodman's motion to dismiss the common law fraud and unjust enrichment claims against him.

### C.  Johnnie Goodman, Jr.

The allegations against Johnnie Goodman, Jr. are similar to the ones against Johnnie Goodman, Sr. in that Goodman, Jr. did not submit a claim to State Farm, and his connection to the scheme is based solely on his family connection to Bruce Goodman.  State Farm does not allege how Johnnie Goodman, Jr. participated in the allegedly fraudulent claims of the other defendants.  State Farm's allegations in the original complaint against Johnnie Goodman, Jr. were merely:

> Bruce Goodman is the brother of Johnnie Goodman, Jr., who was the named insured in at least three other fire claims submitted to various insurance carriers for

properties in Flint, Michigan.  Those claims are described in Items 9c, 9d, and 9e of
Appendix A.

Compl. ¶ 56.

State Farm believes it fortified the allegations against Goodman, Jr. in the amended
complaint when it added charges that he participated in the scheme in three capacities: individually
for the rental properties he owns; as a business owner of Kingdom Builders; and as a pastor and
executive of his church in Flint.

 The amended complaint alleges that Goodman, Jr. submitted three fire-damage claims to
other insurance carriers for three of his rental properties over the span of the past eighteen years.
State Farm alleges that Goodman, Jr. engaged in fraud when State Farm paid him alternative living
expense reimbursement for one of his tenants.  But the allegation is conclusory.  There are no
supporting facts.  The amended complaint does not offer any fraudulent statement, communication,
or representation made by Goodman, Jr. concerning the payments, or even that Goodman, Jr. said
anything to State Farm in connection with the payments.

State Farm alleges that defendant Johnnie Goodman, Jr. engaged in fraud through his fire-
repair business, Kingdom Builders, which he has owned since 1991.  The amended complaint
explains that Goodman, Jr. profited from those fire losses by performing remedial repairs, but it does
not state facts that support an inference that he caused the loss initially or had a hand in setting the
fires.  The amended complaint states that Goodman, Sr. would alert Goodman, Jr.  to a fire loss, and
then Goodman, Jr.'s company, Kingdom Builders, would solicit the fire repair work.  The plaintiff
has not explained how that conduct could be considered wrongful or fraudulent.  The idea that a
conspiracy springs from that conduct is conclusory — no more — and it offers nothing more than
a "label and conclusion [of fraud.]"  *Iqbal*, 129 S. Ct. at 1949.

-17-

State Farm also alleges that defendant Johnnie Goodman, Jr. participated in the alleged fraudulent scheme through the Church at Flint, where he is a pastor and executive director.  State Farm alleges the Church at Flint engaged in fraud because it was listed as the "grantee or grantor on more than forty quit[-]claim deeds for the sales of homes in Flint," and "[s]everal of the homes . . . have experienced fires resulting in insurance claims either before or after the transaction."  Am. Compl. ¶ 41.  However, there is no suggestion that the transactions were illegal or even secret, and no inference of fraud or conspiracy is justified by those allegations.

The Court cannot detect pleaded factual material in the amended complaint that supports a plausible inference of fraud or concerted action against Johnnie Goodman, Jr.  Therefore, his motion to dismiss, styled as a motion for summary judgment, will be granted.

### III.  Motions to sever

Defendants Bruce Goodman and Johnnie Goodman, Sr. argue that the complaint does not allege how there is a commonality of interest or what facts are common to all defendants, except that all of them are claims for a fire.  They also argue that there are no allegations in the complaint that tie Johnnie Goodman, Sr. or Bruce Goodman to any fires except their own claims.  The only commonality alleged in the complaint, they argue, is that the defendants all made fire loss claims and four of the defendants are related (a father, two sons, and a nephew).

There is no need to address Johnnie Goodman, Sr.'s argument because his motion to dismiss will be granted.  The plaintiff contends that the complaint sets forth a common scheme in which all fourteen defendants participated in some capacity.  Therefore, it contends, all defendants should remain in a single action.

Federal Rule of Civil Procedure 20(a) allows individuals to be joined "in one action as defendants if:"

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Whether "a particular factual situation constitutes a single transaction or occurrence" is a case-specific inquiry. *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) (citing 7 C. Wright Federal Practice and Procedure § 1653 at 270 (1972)). Although "[n]o hard and fast rules have been established under the rule . . . construction of the terms 'transaction or occurrence' as used in the context of Rule 13(a) counterclaims offers some guide to the application of this test." *Ibid.* The Supreme Court explained that, in the context of Rule 13, "'transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. New York Cotton Exch.*, 270 U.S. 593, 610 (1926). Drawing on the Supreme Court's guidance, the Eighth Circuit held that "Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding." *Mosley*, 497 F.2d at 1333.

The amended complaint alleges that Bruce Goodman participated with Derwin Sykes to conceal activity related to the practice of intentionally setting fires and then submitting insurance claims for the resulting losses. As mentioned earlier, the allegations against Bruce Goodman are not extensive. But there is sufficient factual matter pleaded to support the conclusion that the plaintiff is asserting a right to relief against him that "aris[es] out of the same transaction,

occurrence, or series of transactions or occurrences" as alleged against the other defendants. Therefore, the motion to sever will be denied.

## IV.  Motion to dismiss counterclaim

Defendant Lynette Hurt-Hatter filed a counterclaim alleging abuse of process and slander against State Farm.  State Farm argues that both counts of the counterclaim fail to plead a cause of action under Michigan law for these reasons:  Hurt-Hatter's abuse of process claim alleges only that State Farm filed its complaint and served her with process, which by itself is insufficient to state a claim for abuse of process.  Hurt-Hatter's slander claim also fails to state a claim because it lacks any of the necessary details about the allegedly defamatory statement that Michigan law requires a litigant to plead.  In the alternative, State Farm seeks an order for a more definite statement with respect to Hurt-Hatter's slander counterclaim.

"To recover upon a theory of abuse of process, a plaintiff must plead and prove (1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding.  *Friedman v. Dozorc*, 412 Mich. 1, 30, 312 N.W.2d 585, 594 (1981) (citing *Spear v. Pendill*, 164 Mich. 620, 623, 130 N.W. 343, 344 (1911)).  To satisfy the "ulterior purpose" element, Hurt-Hatter must allege that State Farm "has used a proper legal procedure for a purpose collateral to the intended use of that procedure."  *Bonner v. Chicago Title Ins. Co.*, 194 Mich. App. 462, 472,  487 N.W.2d 807, 812 (1992) (citing *Vallance v. Brewbaker*, 161 Mich. App. 642, 646, 411 N.W.2d 808, 810 (1987)).

A claim for an abuse of process "lies for the improper use of process after it has been issued, not for maliciously causing it to issue."  *Spear*, 164 Mich. at 623, 130 N.W. at 344.  Therefore, Hurt-Hatter must allege that State Farm did more than cause a summons and complaint to be issued.

-20-

*Friedman*, 412 Mich. at 31, 312 N.W.2d at 595 (passing over motive inquiry and dismissing claim for abuse of process because plaintiff alleged only that defendant had caused a summons and complaint to issue).

State Farm argues that Hurt-Hatter's counter-complaint must be dismissed because she has failed to allege that State Farm had an ulterior purpose in using the Court's process and that State Farm used process in any manner beyond the mere filing and service of its complaint and summons. State Farm is correct. Hurt-Hatter, relying on *Conley v. Gibson*, 355 U.S. 41 (1957), argues that her counter-complaint should not be dismissed because State Farm has not proven that relief is impossible under any set of facts that could be established consistent with the assertions in the counterclaim. That argument ignores the Supreme Court case law laying *Conley v. Gibson* to rest and demanding more exacting pleading standards. *See Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 561-62.

In all events, *Friedman* is controlling. Hurt-Hatter's abuse-of-process claim must be dismissed because she has not alleged that State Farm did more than cause a summons and complaint to be issued.

To plead "a cause of action for defamation . . . [the plaintiff must allege]: '(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.'" *Williams v. Detroit Bd. of Educ.*, 523 F. Supp. 2d 602, 605-06 (E.D. Mich. 2007) (quoting *Rouch v. Enquirer & News of Battle Creek*, 440 Mich. 238, 251, 487 N.W.2d 205, 211 (1992)).

State Farm argues that Michigan's pleading standard for defamation claims applies in this case; and that under Michigan law, "[a] plaintiff must plead a defamation claim with specificity." *Id.* at 606 (citing *Royal Palace Homes, Inc. v. Channel 7 of Detroit*, 197 Mich. App. 48, 52, 495 N.W.2d 392, 394 (1992)).

State Farm, however, does not explain why the Court should apply state law to the procedural issue of pleading requirements. The Federal Rules of Civil Procedure govern the pleading requirements in federal court. *Ridgway v. Ford Dealer Computer Servs, Inc.*, 114 F.3d 94, 98 n.5 (6th Cir. 1997) ("Of course, an argument that the federal district court should have followed Michigan's pleading requirements would have been meritless."); *see also Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, --- U.S. ---, 130 S. Ct. 1431, 1448 (2010) (reiterating the "long-recognized principle that federal courts sitting in diversity 'apply state substantive law and federal procedural law'" (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965))). Addressing a similar issue in the context of a challenge to the sufficiency of a complaint in a medical malpractice claim, this Court stated:

> Federal Rule of Civil Procedure 8 requires only that "[a] pleading which sets forth a claim for relief [must] . . . contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Fed. R. Civ. P. 8(a). There are no heightened pleading requirements for medical malpractice cases contained in Rule 8(a). In fact, the Supreme Court has held that it is inappropriate for a federal court to require pleading beyond Rule 8's basic formula.

*Long v. Adams*, 411 F. Supp. 2d 701, 706 (E.D. Mich. 2006) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002)).

Federal Rule of Civil Procedure 9(b) requires plaintiffs to plead fraud and mistake with particularity; it does not mention a heightened pleading standard for defamation. Hurt-Hatter need

-22-

only satisfy Rule 8, which requires her to plead "sufficient factual matter, [when] accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly* 550 U.S. at 570).

In her counter-complaint, Hurt-Hatter alleges that "[she] had a Homeowner's Insurance Policy with State Farm for several years," which covered her home at 722 Loyola, Flint, Michigan against loss caused by fire. Counter-complaint [dkt. #22] ¶ 113-15. She alleges that, on March 26, 2009, her house was destroyed by fire and that she employed Ace Adjusting, Inc., a public adjusting firm, to help with her claim. *Id.* ¶¶ 116-17. She also hired "a contracting company, owned by Johnnie Goodman, Jr. to provide an estimate of the structural damage to her home." *Id.* ¶ 118. She also hired "an attorney to assist her in adjusting her claim with State Farm." *Id.* ¶ 119. "[O]nce [her] claim was partially settled, [she] employed a construction company to repair her home." *Id.* ¶ 120. Hurt-Hatter "was advised that employee's [sic] and or agents of State Farm informed others of the community that she had submitted or cause[d] to have submitted a false claim to State Farm." *Id.* ¶ 121. Hurt-Hatter alleges that State Farm knew the accusations "were false or made with reckless disregard for the truth, knowing that they would cause injury." *Id.* ¶ 122. Hurt-Hatter's allegations, when taken as true, allege sufficient factual matter to state a plausible claim to relief for slander. Therefore, the Court will deny State Farm's motion to dismiss Hurt-Hatter's claim for slander.

## V. Conclusion

The Court finds that the amended complaint does not state a claim for relief against defendants Johnnie Goodman, Sr. or Johnnie Goodman, Jr. The amended complaint does plead sufficient facts to state a claim against defendant Bruce Goodman. Those claims against Bruce

Goodman are part of the same transaction alleged against the other defendants. Defendant Lynette Hurt-Hatter's counterclaim fails to state a claim for abuse of process but it does state a claim for slander.

Accordingly, it is **ORDERED** that the motion to dismiss by defendants Johnnie Goodman, Sr. and Bruce Goodman [dkt. # 5] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the motion to sever [dkt. #9] is **DENIED**.

It is further **ORDERED** that defendant Johnnie Goodman, Jr.'s motion for summary judgment [dkt. # 39] is **GRANTED**.

It is further **ORDERED** that the plaintiff's motion to dismiss defendant Lynette Hurt-Hatter's counterclaim [dkt. #32] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the amended complaint is **DISMISSED WITH PREJUDICE** against defendants Johnnie Goodman, Sr. and Johnnie Goodman, Jr., **ONLY**.

It is further **ORDERED** that the abuse of process claim in defendant Lynette Hurt-Hatter's counterclaim is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: March 19, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 19, 2012.

s/Deborah R. Tofil
DEBORAH R. TOFIL